**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | **CRIMINAL ACTION** |
| | : | |
| **v.** | : | **NOS.  14-528** |
| | : | **17-92** |
| **ERICK LASZLO MATHE** | : | |

## <u>MEMORANDUM</u>

**KEARNEY, J.**                                                                                       **June 30, 2020**

Congress requires an incarcerated person seeking compassionate release from custody persuade us: of "extraordinary and compelling" reasons for a sentence reduction; he will not be a danger to his community if released; and, a reduced sentence is today warranted based on factors provided by Congress as applied to all sentences.  Erick Laszlo Mathe, a forty-eight-year-old man incarcerated for a sixty-five-month sentence at FCI Marianna in Florida with an elevated hemoglobin A1C and a twenty-year smoking history, moves *pro se* for his compassionate release from custody after serving nearly half of his sentence. He exhausted his internal remedies with the Bureau of Prisons at FCI Marianna. But he fails to provide medical records or basis for a health concern.  He instead alleges the conditions at FCI Marianna do not allow for social distancing and present unique hazards for COVID-19 transmission. Joining our colleagues reviewing similar health concerns, we do not find Mr. Mathe's health status or smoking history put him at a recognized heightened risk for worse outcomes from COVID-19 in his facility.  We appreciate his fear of contracting COVID-19 but mere apprehension without more is not an extraordinary and compelling reason to reduce a final sentence. A reduced sentence is also not consistent with the sentencing factors we apply in evaluating all sentences. We deny Mr. Mathe's motion for compassionate release.

I.      Facts

From January 2009 to September 2010, Mr. Mathe and his co-conspirator made fraudulent representations to induce investment in Mr. Mathe's company, Vision Broadcast Network, a "start-up" television and production company incorporated and located in Fort Lauderdale, Florida.[1] With his co-conspirator, Mr. Mathe actively solicited funds for Vision Broadcast Network and fraudulently represented to investors Mr. Mathe owned and controlled approximately seventy licenses from the Federal Communication Commission (FCC) to build, own and operate Low Power Television Stations.[2] As he later admitted, he did not own or control the FCC licenses.[3] Also, Mr. Mathe represented Vision Broadcast Network had obtained "Lease Management Purchase Agreements," represented the company possessed a commitment letter from a group of foreign investors, and took fees from the investment money he raised without telling investors.[4] The United States charged Mr. Mathe with three counts of wire fraud and one count of conspiracy to commit money laundering, all in violation of 18 U.S.C. §§ 1343 and 1956(h), and two arising from his participation in a scheme to defraud investors by making false representations inducing them to invest in his company Vision Broadcast Network.[5] In 2016, Mr. Mathe pleaded guilty to all counts.[6]

In 2017, the United States charged Mr. Mathe in a second, separate fraud scheme.[7] The United States alleged from May 2012 to April 2013, Mr. Mathe, using the alias "Brian Calloway," made fraudulent statements to induce potential investors to invest a company named Doctors TV Network through his companies M&A Capital Partners, LLC and Medical Health Media.[8] Mr. Mathe induced investors to invest in the startup Doctors TV Network by making payments to Mr. Mathe's companies.[9] Mr. Mathe then used the investors' money for his own personal use,

defrauding two investors of at least $178,000.[10]  Mr. Mathe pleaded guilty to one count of wire fraud under 18 U.S.C. § 1343. [11]

The Honorable L. Felipe Restrepo varied significantly from the recommended guidelines range of 97 to 121 months and sentenced Mr. Mathe to a sixty-five-month total sentence for both schemes in March 2018, with three years of supervised release.  Judge Restrepo ordered restitution to over twenty victims for over $2.8 Million in proceeds from this fraud. Mr. Mathe claims a release date of November 17, 2022.[12]  Mr. Mathe is currently serving his sentence at FCI Marianna, in Marianna, Florida, and he alleges he has served roughly fifty percent of his sentence.[13]

Mr. Mathe alleges he requested compassionate release on May 1, 2020 from the Bureau of Prisons seeking "immediate consideration for 'Compassionate Release' due to . . . 'Extraordinary & Compelling' reasons highlighting the high probability of severe illness or death should [he] contract the COVID-19 virus."[14]  More than thirty days passed without response from the Bureau of Prisons when Mr. Mathe moved for compassionate release.[15]

### A.    Mr. Mathe's health

Forty-eight-year-old Mr. Mathe alleges his medical history includes twenty or more years of smoking, and an elevated hemoglobin A1C,[16] which is an indicator of risk for developing diabetes.[17]  He offers no other medical history other than a few pages of normal lab values.[18]

### B.    COVID-19 affecting incarcerated persons

The novel "coronavirus disease 2019," known as COVID-19, is a respiratory disease spread via droplets produced when an infected person, symptomatic or asymptomatic, talks, coughs, or sneezes.[19] "Spread is more likely when people are in close contact with one another (within about 6 feet)."[20]  COVID-19, which is now a global pandemic, poses a serious public health risk.  People over age sixty-five and those of any age with underlying medical conditions

may be at higher risk for worse outcomes or death from COVID-19, including those with serious heart conditions, moderate to severe asthma, diabetes, chronic lung disease, or a weakened immune system.[21]

Correctional facilities "present unique challenges for control of COVID-19 transmission among incarcerated/detained persons [and] staff[.]"[22] While most of the country socially distances to avoid community spread, incarcerated persons struggle to follow the Center for Disease Control's guidelines to mitigate the spread of the virus and face a heightened risk of contagion.[23] Mr. Mathe alleges the conditions at FCI Marianna, where he is currently housed, do not allow for social distancing and present unique hazards for COVID-19 transmission.[24]

## II.    Analysis

Mr. Mathe moves *pro se* for compassionate release under 18 U.S.C. § 3852(c)(1)(A) arguing his health conditions put him at a particularly high risk of death or severe health outcomes if he were to contract COVID-19.  He asserts this is an "extraordinary and compelling" reason for a sentence reduction under section 3582.  We disagree.

Congress allows us to reduce an incarcerated person's sentence if we determine (1) the inmate meets administrative exhaustion requirements, (2) "extraordinary and compelling reasons" warrant a reduction, (3) the reduction would be "consistent with any applicable policy statements issued by the Sentencing Commission"; and, (4) the applicable sentencing factors under section 3553(a) warrant a reduction.[25]  Mr. Mathe exhausted his administrative remedies and appropriately moves for compassionate release, but we do not find Mr. Mathe's smoking history or elevated hemoglobin A1C puts him at a heightened risk for worse outcomes from COVID-19. We deny Mr. Mathe's motion for compassionate release without needing to reach the question of whether he poses a danger to the community or if a sentence reduction is consistent with the section 3553(a)

4

factors. Mr. Mathe does not qualify for sentence reduction absent "extraordinary and compelling" reasons. Even if he did, reducing his sentence now is not consistent with section 3553(a) factors.

**A.    Mr. Mathe exhausted his remedies with the Bureau of Prisons.**

Mr. Mathe sought compassionate release by direct appeal to the warden of FCI Marianna on May 1, 2020.[26] Under the First Step Act, incarcerated persons have "two direct routes to court: (1) file a motion after fully exhausting administrative appeals of the [Bureau of Prison's] decision not to file a motion, or (2) file a motion after 'the lapse of 30 days from the receipt ... of such a request' by the warden of the defendant's facility, 'whichever is earlier.'"[27]

As of the filing of Mr. Mathe's motion, the Warden had not responded to his request, thus exhausting his administrative remedies under section 3852.[28]

**B.    The dangers COVID-19 presents to Mr. Mathe do not constitute "extraordinary and compelling reasons" for his release.**

Mr. Mathe alleges his age, smoking history, and elevated hemoglobin A1C in light of the COVID-19 pandemic satisfies the "extraordinary and compelling reasons" Congress required for compassionate release under section 3582(c)(1)(A)(i). His medical history does not create a recognized heightened risk of poor outcomes from COVID-19.

Congress provides a mechanism for us to modify terms of imprisonment if "extraordinary and compelling reasons warrant such a reduction . . . and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission . . . ."[29] Section 1B1.13 of the United States Sentencing Guidelines is the only applicable policy statement which has not been amended since enactment of the First Step Act in December 2018.[30] The policy statement provides to constitute "extraordinary and compelling reasons," we must find:

(A) Medical Condition of the Defendant.—

(i) The defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory). A specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.

(ii) The defendant is—

> (I) suffering from a serious physical or medical condition,
> (II) suffering from a serious functional or cognitive impairment, or
> (III) experiencing deteriorating physical or mental health because of the aging process, that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

(B) Age of the defendant.—
. . .

(C) Family Circumstances.—
. . .

(D) Other Reasons.—As determined by the Director of the [BOP], there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C).[31]

As of June 29, 2020, the Centers for Disease Control and Prevention reported a total of 2,545,250 cases of COVID-19 in the United States with 126,369 total deaths caused by the virus.[32] People of any age with the following conditions **_are at increased risk of severe illness from COVID-19_**: chronic kidney disease; COPD (chronic obstructive pulmonary disease); immunocompromised state (weakened immune system) from solid organ transplant; obesity (body mass index [BMI] of 30 or higher); serious heart conditions, such as heart failure, coronary artery disease, or cardiomyopathies; Sickle cell disease; and Type 2 diabetes mellitus.[33] People of any age with the following conditions **_might be at an increased risk for severe illness from COVID-19_**: asthma (moderate-to-severe); cerebrovascular disease (affects blood vessels and blood supply to the brain); cystic fibrosis; hypertension or high blood pressure; immunocompromised state

(weakened immune system) from blood or bone marrow transplant, immune deficiencies, HIV, use of corticosteroids, or use of other immune weakening medicines; neurologic conditions, such as dementia; liver disease; pregnancy; pulmonary fibrosis (having damaged or scarred lung tissues); smoking; Thalassemia (a type of blood disorder); and Type 1 diabetes mellitus.[34]

Mr. Mathe alleges his twenty-year smoking history causes immunosuppression and his A1C of 5.7 puts him in the prediabetic range placing  him at an increased risk for poor outcomes from COVID-19.[35] A history of smoking without a secondary diagnosis, such as COPD, is not recognized as a risk factor for worse outcomes from COVID-19 by the CDC. Nor has an elevated hemoglobin A1C without a confirmed diabetes diagnosis. What is more, forty-eight years old does not put Mr. Mathe in the sixty-five-plus high-risk category.

We are persuaded by the analysis in other cases denying compassionate release in light of COVID-19 based entirely on medical diagnoses which do not meet the level of risk detailed by the Sentencing Commission in section 1B1.13[36] For instance, in *United States v. Viteri*,  Chief Judge Wolfson denied compassionate release to  "a generally healthy, well-functioning 41-year old male, and that the medical records from the Bureau of Prisons ("BOP")" did not show serious medical conditions, let alone those placing an individual at a high risk for poor outcomes from COVID-19.[37]  In *United States v. Haney*, Judge Rakoff denied compassionate release to a sixty-one-year-old man with no serious health diagnoses which could place him at a high risk of poor outcomes from COVID-19.[38] Like  *Viteri* and *Haney*, Mr. Mathe is younger than sixty-five and does not have a diagnosis  placing him at an increased risk or might place him at an increased risk of severe illness from COVID-19.  He does not present "extraordinary and compelling" reasons for sentence reduction.

We are mindful of the unique challenges correctional institutions face considering this global pandemic,[39] and do not doubt Mr. Mathe's view social distancing at FCI Marianna is difficult and the threat of contagion is high, but we cannot reduce his sentence on those asserted grounds alone.[40]

### C.   We need not consider whether a reduction would be "consistent with any applicable policy statements issued by the Sentencing Commission," or if the applicable sentencing factors under section 3553(a) warrant a reduction.

Without an "extraordinary and compelling" reason for release, we need not consider whether "[t]he defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)"[41]; or "consider[] the [sentencing] factors set forth in section 3553(a) to the extent that they are applicable."[42]

As Mr. Mathe cannot show an extraordinary and compelling reason, we need not proceed into further analysis of whether release comports with policy statements and evaluate Mr. Mathe's possible release by applying the factors under 18 U.S.C. § 3553(a).  If Mr. Mathe's present health presented a serious medical condition, we would then analyze the factors under section 3553(a). "Section 3582(c)(1)(A) requires us to consider the 'factors set forth in section 3553(a) to the extent they are applicable' before we may reduce a sentence. These factors include the need to: 'reflect the nature and circumstances of the offense and the history and characteristics of the defendant'; 'reflect the seriousness of the offense'; 'promote respect of the law'; and 'afford adequate deterrence to criminal conduct.'"[43]

Even if we were to reach the section 3553 factors, we could not release Mr. Mathe at this stage.  He committed a serious fraud crime with dozens of victims.  Many of his and his co-conspirator's victims appeared at sentencing.  They lost life savings in the millions of dollars.  He offers no assurance of restitution made or planned under his sentence. He offers a release plan of

transport to this father's home where he will live, care for his father challenged by prostate cancer, and look for available work in collision and auto repair.  We also received his father's letter confirming his hope for his son's return to care for him during his illness.[44] But he offers no other grounds to revisit the sentence.  He has served, according to him, approximately half of the final sentence.  Judge Restrepo significantly varied from the sentencing guidelines of 97 to 121 months to sentence him to sixty-five months given his conduct and a deterrent.   We have no basis to find a section 3553 factor supports releasing Mr. Torres at this early stage of his necessary sentence.

### III.      Conclusion

Mr. Mathe is understandably concerned with the inability to socially distance to avoid COVID-19 spread in FCI Marianna while he serves his sentence. His apprehension does not equate to extraordinary and compelling reasons required by Congress to reduce a final sentence. We deny his *pro se* request for compassionate release without prejudice to move again if able to show an extraordinary or compelling reason consistent with this Memorandum.

---

[1] ECF Doc. No. 47 at  ¶¶ 1, 11.

[2] *Id.* at ¶¶ 14(a), 14(c), 15.

[3] *Id.* at ¶¶ 14(a), (c).

[4] *Id.* at ¶¶ 14(b), (d).

[5] No. 14-528, ECF Doc. No. 191.

[6] *Id.*

[7] No. 17-92, ECF Doc. No. 1.

[8] *Id.*

[9] *Id.* at ¶¶ 6-15.

[10] *Id.*

[11] *Id.* at ECF Doc. No. 24.

[12] No. 14-528, ECF Doc. No. 191; No. 17-92 at ECF Doc. No. 24.

[13] No. 14-528, ECF Doc. No. 191 at 2 (using the pagination assigned by the CM/ECF docketing system).

[14] No. 14-528, ECF Doc. No. 203 at 15 (using the pagination assigned by the CM/ECF docketing system). Mr. Mathe's email to the Warden cites his age (forty-eight-years-old), his smoking history, and his elevated hemoglobin A1C as reasons for compassionate release. *Id.*

[15] No. 14-528, ECF Doc. No. 203.  Mr. Mathe dated his motion on June 2, 2020 and mailed to our Clerk of Court seeking relief from his sentencing judge the Honorable L. Felipe Restrepo, now serving on our Court of Appeals.   Our Clerk of Court could not process and docket Mr. Mathe's mailed motion until June 18, 2020 due to stay-home Orders intended to mitigate COVID-19 spread in Philadelphia. Our Court of Appeals vacated the earlier assignment of this matter to Judge Restrepo. ECF Doc. No. 206.  Chief Judge Sánchez reassigned these cases to our docket as related to the co-conspirator's case on our docket.  ECF Doc. Nos. 204, 31. We immediately referred Mr. Mathe's *pro se* Motion to the Federal Defender for review and possible appointment. ECF Doc. No. 205.  The Federal Defender promptly studied the Motion and declined to represent Mr. Mathe at this time without prejudice to later doing so.

[16] No. 14-528, ECF Doc. No. 203 at 12.  The A1C test is a common blood test used to diagnose type 1 and type 2 diabetes and to monitor diabetes management.  The test reflects an average blood sugar level for the past two to three months. The higher the A1C level, the poorer blood sugar control and the higher risk of diabetes complications. *See* https://www.mayoclinic.org/tests-procedures/a1c-test/about/pac-20384643 (last visited June 29, 2020).

[17] The American Diabetes Association, *Understanding A1C*, https://www.diabetes.org/a1c  ("If your A1C level is between 5.7 and less than 6.5%, your levels have been in the prediabetes range.") (last visited June 28, 2020).

[18] No. 14-528, ECF Doc. No. 203 at 12-14.

[19] Centers for Disease Control and Prevention, *How COVID-19 Spreads*, https://www.cdc.gov/coronavirus/2019-ncov/prevent-getting-sick/how-covid-spreads.html?CDC_AA_refVal=https%3A%2F%2Fwww.cdc.gov%2Fcoronavirus%2F2019-ncov%2Fprepare%2Ftransmission.html (last visited June 26, 2020).

[20] Centers for Disease Control and Prevention, *Coronavirus Disease 2019 Frequently Asked Questions*, https://www.cdc.gov/coronavirus/2019-ncov/faq.html?CDC_AA_refVal=  https%3A%2F%2F%20www.cdc.gov%2Fcoronavirus%2F2019- cov%2Fprepare %2Ffaq.html#Basics (last visited June 28, 2020).

[21] Centers for Disease Control and Prevention, *People who Need to Take Extra Precautions*, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/groups-at-higher-risk.html (last visited June 28, 2020).

[22] Centers for Disease Control and Prevention, *Guidance for Correctional Detention*, https://www.cdc.gov/coronavirus/2019-ncov/community/correction-detention/guidance-correctional-detention.html (last visited June 28, 2020).

[23] *See, e.g.*, Joseph A. Bick, *Infection Control in Jails and Prisons*, 45 Clinical Infectious Diseases 1047, 1047 (Oct. 2007) (noting "[t]he probability of transmission of potentially pathogenic organisms [in prisons] is increased by crowding, delays in medical evaluation and treatment, rationed access to soap, water, and clean laundry, [and] insufficient infection-control expertise").

[24] No. 14-528, ECF Doc. No. 203 at 3-5.

[25] 18 U.S.C. § 3582.

[26] ECF Doc. No. 203 at 15.

[27] *United States v. Rodriguez*, No. 03-271, 2020 WL 1627331, at *3 (E.D. Pa. Apr. 1, 2020) (citing 18 U.S.C. § 3852(c)(1)(A)).

[28] ECF Doc. No. 203 at ¶ 2(b).

[29] 18 U.S.C. § 3582.

[30] U.S.S.G. § 1B1.13.

[31] *Id.*

[32] Centers for Disease Control and Prevention, *Cases of Coronavirus Disease (COVID-19) in the U.S.*, https://www.cdc.gov/coronavirus/2019-ncov/cases-updates/cases-in-us.html (last visited June 29, 2020).

[33] Centers for Disease Control and Prevention, *People Who Need Extra Precautions*, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html?CDC_AA_refVal=https%3A%2F%2Fwww.cdc.gov%2Fcoronavirus%2F2019-ncov%2Fneed-extra-precautions%2Fgroups-at-higher-risk.html (last visited June 29, 2020) (emphasis added).

[34] *Id.* (last visited June 29, 2020) (emphasis added).

[35] No. 14-528, ECF Doc. No. 203 at 6.

[36] *See, e.g.*, *United States v. Viteri*, No. 19-44, 2020 WL 3396804, at *4 (D.N.J. June 19, 2020) (denying compassionate release for inadequate medical diagnoses indicating a high risk of worse

outcomes from COVID-19); *U.S. v. Haney*, No. 19-541, 2020 WL 1821988, at *5-6 (S.D.N.Y. Apr. 13, 2020) ([I]f [the petitioner's] age alone were a sufficient factor to grant compassionate release in these circumstances, it follows that every federal inmate in the country above the age of 60 should be forthwith released from detention, a result that does not remotely comply with the limited scope of compassionate release and that would arguably have a devastating effect on a national community that is now itself so under stress."); *U.S. v. Eberhart*, No. 13-313-1, 2020 WL 1450745, at *2 (N.D. Cal. Mar. 25, 2020) ("General concerns about possible exposure to COVID-19 do not meet the criteria for extraordinary and compelling reasons for a reduction in sentence set forth in the Sentencing Commission's policy statement on compassionate release, U.S.S.G. § 1B1.13.").

[37] *Viteri*, 2020 WL 3396804, at *4.

[38] *Haney*, 2020 WL 1821988, at *5-6.

[39] Joseph A. Bick, *Infection Control in Jails and Prisons*, CLINICAL INFECTIOUS DISEASES 45(8) 1047 (October 15, 2007), http://academic.oup.com/cid/article/45/8/1047/3.

[40] We are also aware of the rapid increase in positive cases in Florida generally over the past week. As of June 28, 2020, Florida reports 141,075 in total COVID-19 cases and 3,419 deaths. *See* https://floridahealthcovid19.gov. We are aware of reporting on the rapidly increasing cases of COVID-19 in Florida, including a report cases increased fivefold in two weeks. *See* Frances Robles, *Florida's Covid Cases Up Fivefold in 2 Weeks: 'The Numbers Are Scary'*, June 28, 2020, available at https://www.nytimes.com/2020/06/28 /us/coronavirus-florida-miami.html. As of June 29, 2020, the Bureau of Prisons' website reports "[t]here are 1,422 federal inmates and 137 BOP staff who have confirmed positive test results for COVID-19 nationwide." *See* https://www.bop.gov/coronavirus. But the Bureau of Prisons' website reports zero cases at FCI Marianna, where Mr. Mathe is housed. *See id.* Mr. Mathe cites an article reporting fear among FCI Marianna staff about their exposure to COVID-19, but the article largely refers to their concern about being sent to other high-case-count areas of the country to supplement staff there; the article does not document COVID-19 cases at FCI Marianna. Jarell Baker, *Union members at the Federal Correctional Institution in Marianna express concerns amid COVID-19 outbreak*, WJHG (Apr. 4, 2020), https://www.wjhg.com/content/news/Federal-Corrections-Institute-Marianna-Union-express-concerns-amid-COVID-19-outbreak-569376741.html.

[41] U.S.S.G. § 1B1.13(2).

[42] 18 U.S.C. § 3582(c)(1)(A).

[43] *United States v. Nesbitt*, No. 09-cr-181, 2020 WL 3412577, at *3 (E.D. Pa. June 22, 2020).

[44] ECF Doc. No. 207.